**NOT RECOMMENDED FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-56-HRW

RONALD PERRO                                              PETITIONER

VS:               **MEMORANDUM OPINION AND ORDER**

BRIAN C. PATTON                                    RESPONDENT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Petitioner Ronald Perro, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* Petition for a Writ of Habeas Corpus, Mandamus & Injunctive Relief, claiming jurisdiction under 28 U.S.C. §§2241 or 1361. The matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002).

As the petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

The petitioner claims that the Federal Bureau of Prisons ("BOP"), in order to effectuate its interpretation of 18 U.S.C. §§3621(b) and 3624(c), has promulgated invalid regulations which decide

on Community Corrections Center ("CCC")[1] placements for service of any part of a sentence by categories of prisoners, rather than deciding on the appropriateness of a CCC placement for each inmate individually. Applying these regulations to him, the BOP has considered Perro for a stay in a CCC for only the last one (1) month of his sentence, rather than for the six (6) months to which he is purportedly entitled under the statutes.

## PETITIONER'S ALLEGATIONS

The petitioner has submitted a 14-page self-styled, typewritten petition [Record No. 2] and later letters [Record Nos. 3, 9], which the Court liberally construes as amendments. The following is a summary or construction of the contents of these documents.

Petitioner Perro states that pursuant to a guilty plea on January 11, 2001, he was sentenced to a term of 33 months' imprisonment for the crimes of obstruction of justice and forgery of a judicial signature. When he thereafter twice violated conditions of his supervised release, he pled guilty to the violations and he is now serving the last sentence therefor, eleven months and twenty-nine days, which was handed down on January 9, 2007.

Petitioner further states that after he was transferred to FCI-Ashland, on May 18, 2007, upon his inquiry, the BOP informed him that his release date was January 6, 2008, with a pre-release preparation date of December 2, 2007, meaning that the petitioner can enter a CCC on that date for service of the last month of his sentence. The petitioner alleges that under an old policy, he could have a CCC placement for 6 months, which would begin on July 6, 2007, but "based upon the categorical application of the ten percent rule, petitioner is only entitled to approximately 34 days."

---

[1] CCC's are also known as "halfway houses." Prisoners near the end of their sentences are often placed there to live and work under supervision as a part of preparing them to transition back into the community.

2

As the July date was quickly approaching, the petitioner filed the instant cause of action, asking that the Court consider the merits of his claims herein post haste and not require him to go through the BOP administrative remedy process, as his claim would become moot in the amount of time that procedure would take. Further, "most courts have declined to dismiss challenges to the CCC placement policies which were enacted post December 2002," the petitioner citing cases including this Court's *Colton v. Ashcroft*, 299 F.Supp.2d 681, 688-90 (E.D. Ky. 2004) (the Honorable Jennifer B. Coffman, presiding).

As to the merits of his claim for a 6-month CCC stay, Perro sets out the provisions of 18 U.S.C. §§3621(b) and 3624(c) and explains that prior to December 16, 2002, the BOP interpreted them to permit a prisoner's placement at a CCC for a full 6 months and routinely placed prisoners there for 6 months. On that date in 2002, however, the agency changed its interpretation so as to limit a CCC placement to the last 10% of the prisoner's sentence.

The courts were purportedly divided on a prisoner's rights immediately after that change, differing decisions coming out as to the permissibility of the new interpretation, one being this Court's *Colton* decision. Another outgrowth of the change in policy was that the BOP set about promulgating new regulations consistent with the new policy. Effective February 14, 2005, these regulations now operate to limit an inmate's stay in a CCC to only the last 10% of his sentence in preparation for release. *See* 28 C.F.R. §§570.20 and 570.21. They were in effect when the instant petitioner was sentenced, and it is under these regulations that the BOP has considered any CCC placement as being limited to his last month.

There ensued even more litigation – this time on the validity of the new regulations. Petitioner points to decisions from a variety of district courts and a few appellate courts, including

3

*Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3rd Cir. 2005); *Elwood v. Jeter*, 386 F.3d 17, 28-29 (8th Cir. 2004); and most recently, *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. February 20, 2007). While acknowledging that this Court is not bound by decisions outside the Sixth Circuit, nonetheless, Perro urges the Court to find the rationales in those cases persuasive.

Therefore, the petitioner requests that the Court direct the BOP to consider him for a 6-month CCC placement, pursuant to the pre-December 2002 policy and without application of the new regulations. He claims that he is not only entitled to such habeas relief as was provided to the petitioners in the cited cases, but that he has also met the requirements for mandamus and preliminary injunctive relief. Fed.R.Civ.P. 65.

## DISCUSSION

The petitioner admits that he has not pursued the requisite administrative remedies set forth in 28 C.F.R. §542.10-16 (2006). Prisoners who seek relief under 28 U.S.C. §2241 are required to exhaust judicially created administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam). However, exhaustion is a judicially created requirement, which the courts may waive, as this Court did in *Colton, supra*. The Court is inclined to do so in this case also, so as to reach the merits of whether Perro is entitled to the habeas relief sought.

However, to the extent that the petitioner demands mandamus and preliminary injunctive relief, he has not carried his burden of showing an entitlement thereto. The mandamus statute, 28 U.S.C. §1361, provides as follows:

> The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

4


28 U.S.C. §1361.

The "necessary prerequisites for this court to exercise its mandamus [28 U.S.C. §1361] jurisdiction are that (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Swan v. Clinton*, 100 F.3d 973 (C.A.D.C. Nov. 22, 1996) (citing *American Cetacean Soc'y v. Baldrige*, 768 F.2d 426, 433 (D.C. Cir. 1985), *rev'd on other grounds sub nom. Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221 (1986); *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984).

*Willis v. Sullivan*, 931 F.2d 390, 395-96 (6th Cir. 1991), clarifies that these requirements go to court's jurisdiction under mandamus statute, although often discussed in merits terms as to whether a writ of mandamus should be issued; *Carpet, Linoleum & Resilient Tile Layers v. Brown*, 656 F.2d 564, 567-69 (10th Cir. 1981) (same); *Cook v. Arentzen*, 582 F.2d 870, 876-77 (4th Cir. 1978) (same). Moreover, even if the aforementioned requirements are satisfied, issuance of a writ of mandamus is within the sound discretion of the court. *Simpson v. Reno*, 902 F. Supp. 254 (D.C.D.C. 1995) (motion for summary affirmance granted 1996 WL 556625 (D.C. Cir. Sept. 25, 1996)).

As the instant petitioner has failed to establish even one of the prerequisites for mandamus action, the Court will deny such relief. The Court also need not long consider the petitioner's request for emergency relief and/or a preliminary injunction.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff/petitioner's likelihood of success on the merits; (2) whether the plaintiff/petitioner could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v.*

*Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering these factors in relation to the facts in this case, (1) Petitioner Perro's likelihood of success on the merits before this Court is uncertain, at best. He has demanded a right to be considered for a 6-month placement, a right given other BOP prisoners only by a minority of circuits to date. In this circuit, the decision in *Dismas-Charities, Inc. v. United States Department of Justice*, 401 F.3d 666, 668 (6th Cir. 2005), dealt with the BOP's initial change in policy in 2002 from the 6-month rule to the 10% rule. The Court concluded therein that the change in BOP policy, then stated in a memorandum, was a permissible interpretive rule, not requiring promulgation under the Administrative Procedures Act. Since regulations have now been formally promulgated, however, the Sixth Circuit has not addressed them and so its position on these regulations is unknown.

As to factor (2), while the petitioner understandably prefers to spend the last 6 months of his 11-month sentence in a location with less stringent restrictions, as is understandable, he has not only failed to establish any entitlement thereto but has utterly failed to show any harm flowing from spending 5 of the last 6 months in FCI-Ashland. The petitioner was sentenced to a very short term of imprisonment, 11 months and 29 days. The Court is unable to conclude that denying the relief requested will result in *irreparable* injury, which remains the standard the applicant must meet for preliminary injunctive relief.

As to factors (3) and (4), the district courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78

6

(1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). Finally, the Court is not convinced that the public interest would be served by interfering with the BOP's decision to postpone the petitioner's date for CCC placement to the last month.

Accordingly, **IT IS ORDERED** as follows:

(1) The petitioner's demands for mandamus and preliminary injunctive relief are **DENIED**, without prejudice.

(2) The Clerk of the Court shall serve, by certified mail, a copy of the petition, the letters at Docket Entry 3 and 9 herein, and this Order upon Respondent Warden Brian C. Patton, the Attorney General for the United States, and the United States Attorney for the Eastern District of Kentucky.

(3) Respondent, by counsel, shall answer or otherwise defend within thirty (30) days of the date of entry of this Order. Respondent shall also file with his answer all relevant documentary evidence which bears upon the allegations contained in the petition.

(4) Upon entry of a response herein or upon the expiration of said period of time, the Clerk of the Court shall notify the Pro Se Office.

(5) The petitioner shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(6) For every further pleading or other document he wishes to submit for consideration by the Court, the petitioner shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff/petitioner shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. If a District

Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

(7) Petitioner is hereafter on notice that it is improper to direct correspondence to the Court. If the petitioner wishes to make any request of the Court he must do so in a Motion, properly styled as a pleading, in conformity with the Federal Rules of Civil Procedure, and must send it to the Clerk of the Court for filing in this record. Letters to the Court from Perro after today's date will not be liberally construed but will be disregarded and/or sanctions imposed on the petitioner.

This 5th day of July, 2007.

HENRY R. WILHOIT, JR.
SENIOR U. S. DISTRICT JUDGE

8