**NOT RECOMMENDED FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-056-HRW

RONALD PERRO                                                          PETITIONER

VS:            **MEMORANDUM OPINION AND ORDER**

BRIAN C. PATTON                                                       RESPONDENT

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

This matter is before the Court for a decision on the instant *pro se* petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241.

BACKGROUND

On May 25, 2007, Ronald Perro, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland"), in the Eastern District of Kentucky, filed the Section 2241 petition herein. He claims that the Federal Bureau of Prisons ("BOP") has promulgated invalid regulations which decide on Community Corrections Center ("CCC")[1] placements by categories of prisoners, rather than deciding on the appropriateness of a CCC placement for each inmate individually, as is required under the correct interpretations of 18 U.S.C. §§ 3621(b) and 3624(c). Applying these regulations to him, the BOP has considered Perro for a stay in a CCC for only the last one (1) month of his sentence, rather than for the six (6) months to which he is purportedly entitled under the cited statutes.

---

[1] CCC's are also known as "halfway houses." Prisoners near the end of their sentences are often placed there to live and work under supervision as a part of preparing them to transition back into the community.

Upon review of the petition, this Court issued a Memorandum Opinion and Order summarizing Perro's allegations, including the facts regarding his current incarceration and how the instant issue arose. He admitted to having been sentenced to a term of 33 months' imprisonment for obstruction of justice and forgery of a judicial signature on January 11, 2001, and after service in prison, having twice violated the conditions of his supervised release.

Petitioner is now serving the last sentence for his violations, an eleven-month and twenty-nine-day sentence which was handed down on January 9, 2007. After he arrived at FCI-Ashland, on May 18, 2007, the BOP informed him that his release date was January 6, 2008, with a pre-release preparation date of December 2, 2007. This means that the Petitioner can enter a CCC on December 2nd of this year for service of the last part of his sentence.

In its earlier Order the Court also traced the legal controversy which Petitioner posited. He has alleged that under an old interpretation of the relevant statutes, which is known as "the 6-month rule," he would have been scheduled for a CCC placement for 6 months, to begin on July 6, 2007; however, under the BOP's new policy and regulations, effective 2005, which are improperly "based upon the categorical application of the ten percent [10%] rule, Petitioner is only entitled to approximately 34 days," which is only the last 10% of his sentence.

Because the July date which he desired was quickly approaching, the Petitioner filed the instant cause of action, challenging the changed policy and regulations and asking that the Court not require him to go through the BOP administrative remedy process. He cited abundant case law in support of waiving the administrative exhaustion requirement, including this Court's *Colton v. Ashcroft*, 299 F.Supp.2d 681, 688-90 (E.D. Ky. 2004) (the Honorable Jennifer B. Coffman

presiding) and in support of invalidating the new regulations at 28 CFR § 570.21-21, the most recent being *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. February 20, 2007).

The Court ordered the warden to respond to the petition.

### GOVERNMENT'S RESPONSE

The Response [Record No. 17] contains the supporting declarations of BOP personnel, who start with the facts regarding Perro's incarcerations. They reveal that his criminal career goes back to 1980 and they detail his most recent incarcerations. Petitioner began his term of supervised release for the 2001 conviction in June of 2002, and was returned to prison 18 months later for violating that release; upon his second attempt at supervised release, in March of 2005, he re-offended in December of 2006; and his current sentence for the second violation began in January of 2007, as he alleged.

The Respondent also sets out the provisions of the statutes relevant to CCC placements, 18 U.S.C. §§ 3621(b) and 3624(c), and traces the change in BOP interpretations of these statutes, from a pre-2002 policy to the current policy, established by regulations, effective in 2005. One change in terminology should be noted first. Halfway houses and CCC's are now called residential re-entry centers ("RRC"), a term which "more accurately describes the purpose of the halfway house as part of the transitional programming for a federal prisoner's re-entry into society." Record No. 17 at 1.

The Respondent's position is that this petition should be denied and the cause dismissed, either for lack of subject matter jurisdiction or for Perro's failure to state a claim upon which relief may be granted. He strongly urges that Petitioner be required to exhaust the BOP administrative remedy process, not only because it is routinely required but also because it would have provided multiple benefits to the Court in this case, including providing a record for review.

3

Respondent contends that Perro's underlying "facts" are not true. Perro's allegations notwithstanding, Respondent states that Petitioner was not limited to a one-month RRC placement because of the new policy interpreting the relevant statutes, nor because of the new highly criticized regulations which he seeks to have this Court invalidate. Rather, the Respondent insists, Petitioner's placement has been set at a lesser amount of time because of certain specific factors which were properly taken into account, consistent with these laws and the BOP's own Program Statement ("PS") 7310.04, *Community Corrections (CCC) Utilization and Transfer Procedures*. Perro's unit team looked at his individual situation and determined that 34 days was sufficient to prepare him for community readjustment, based on "his very short sentence and strong community ties and resources."

Consequently, the Respondent claims, the issues in Petitioner's case are merely speculative and based on erroneous assumptions about the reasons for the length of his RRC/CCC placement. Therefore, he has not presented a justiciable case or controversy and dismissal is appropriate.

PETITIONER'S LATEST FILINGS

Although not authorized to do so, Petitioner has replied to the warden's answer with two affidavits [Record Nos. 18-19]. The Court has chosen to consider them, given Perro's *pro se* status. Even so, however, the contents of these pleadings do not resolve the matter in Perro's favor.

Petitioner insists therein that the BOP's decision was based on a categorical 10% rule, as were the decisions on many other prisoner at FCI-Ashland, and he lists the names of many prisoners there. Perro complains that his team made the 34-day decision without knowing that he has no post-release employment or housing arranged; the decision was, in fact, arbitrarily made. Moreover, the RRC decision was contrary to the decision in Petitioner's most recent prior incarceration, in that he

4

received a CCC placement which was twice as long in 2004, *i.e.*, 75 days, and his circumstances have not changed since then.

Perro contends that this Court would be acting correctly to not require exhaustion but to order the BOP to make the RRC decision based on pre-2002 law.

## DISCUSSION

Without an administrative record, the Court has only two competing affidavits going to the reason(s) for the BOP's decision to place Perro in an RRC for the last 34 days of his sentence. The Court is not, therefore, in the appropriate posture for ruling on the BOP's admitted change of policy from the 6-month rule to the 10% rule with regard to CCC placements, nor the validity of its new regulations for implementing 18 U.S.C. §§ 3621(b) and 3624(c), nor the propriety of the reasons for the specific 34-day decision made with regard the Petitioner herein.

This Court described the on-going litigation on these issues in its earlier memorandum opinion and order. While it is tempting to wade into the legal fracas on the issue of the categorical approach to RRC decisions, as promulgated in the BOP's last word on the subject, 28 CFR § 570.20-21, the Court will not do so herein. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995) (citing *Golden v. Swickler*, 394 U.S. 103, 108 (1969), and holding that under Article III, a federal court must limit its jurisdiction to ripe cases to avoid issuing advisory opinions based upon hypothetical situations). Truly, if the new regulations were not applied to the instant Petitioner, then there is no basis for the Court to issue an opinion thereon.

On the record herein, the Court finds only that (1) the BOP is vested with broad discretion in making decisions under both 18 U.S.C. §§ 3621(b) and 3624(c); (2) Petitioner failed to exhaust his administrative remedies prior to the filing herein; and (3) Petitioner has failed to establish that

5

Case: 0:07-cv-00056-HRW Doc #: 20 Filed: 08/22/07 Page: 6 of 6 - Page ID#: 160
"[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Ronald Perro's petition for writ of habeas corpus is **DENIED**.

(2) This action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This August 22, 2007.

Signed By:
Henry R Wilhoit Jr.
United States District Judge